# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) **Criminal No. 21-MJ-02498-MBB** |
| **V.** | ) |
| | ) |
| **ERNESTO HERRERA** | ) |
| | ) |
| **Defendant.** | ) |

## EMERGENCY MOTION FOR STAY AND
## REVOCATION OF A RELEASE ORDER

The United States, by and through the undersigned Assistant United States Attorney, hereby

files this *Emergency Motion For Stay and For Revocation of a Release Order* in the above-

captioned case. Pursuant to 18 U.S.C. §3145(a)(1), this Court has jurisdiction over any government

motion to revoke an order of pretrial release filed by a magistrate judge in the district where the

defendant was arrested, which in this case, is the Northern District of Illinois. Because there are

no conditions or combination of conditions that could either reasonably assure the safety of the

community or the Defendant's appearance, as set forth below, the government requests that this

court revoke the magistrate judge's order of release and order the defendant held pending trial.

### Procedural Background

On June 1, 2021, the Defendant, Ernesto Herrera, was charged by criminal complaint with

one count of sexual exploitation of children, in violation of Title 18, United States Code, Section

2251(a), and one count of receipt of child pornography, in violation of Title 18, United States

Code, Section 2252A(a)(2)(A) (Case No. 21-MJ-2498-MBB). A federal arrest warrant for the

Defendant was issued the same day.

On June 3, 2021, following a search of the Defendant's residence, the Defendant was

arrested and appeared before Magistrate Judge Beth W. Jantz in the Northern District of Illinois

for an initial appearance and removal to this District, pursuant to Rule 5 of the Federal Rules of Criminal Procedure. The government moved for detention based upon 18 U.S.C. §§ 3142(f)(1)(A), 3142(e), and 3142(f)(2)(a) and asked the judge to detain the Defendant pending removal to, and trial in, this District.  Pursuant to 18 U.S.C. § 3142(e), there is a presumption in this case that no condition or combination of conditions would reasonably assure the appearance of the Defendant or the safety of the community, based upon *both* charges against the Defendant.

The Court scheduled a detention hearing for June 7, 2021.  At the hearing, both parties proceeded by proffer.  A transcript of this hearing is attached to this filing as Government's Exhibit 1.  The Court continued the detention hearing until June 9, 2021, to allow the Defendant's parents to consider whether they could commit to the Court's proposed terms of release and to allow Pretrial Services to interview the Defendant's live-in girlfriend to determine whether she would restrict her access to electronic devices if the Defendant were released.

Ultimately, on June 9, 2021, Magistrate Judge Jantz ruled from the bench and ordered the Defendant released on a $10,000 unsecured bond to his father, who would serve as a third-party custodian.  A transcript of this hearing is attached to this filing as Government's Exhibit 2.  The Defendant was placed on "home incarceration" with location monitoring at his parent's residence, where he was residing when he committed this offense.  The Defendant was prohibited from accessing the internet or using "internet-accessible electronic devices."  However, the Defendant's father, mother, and live-in girlfriend, who would be residing at the same residence as the Defendant, were each permitted one internet-accessible device.  Additionally, the Court found that the Defendant's sister, who is approximately nine months pregnant, would serve as third-party custodian when the Defendant travelled from the Northern District of Illinois to the District of Massachusetts to face his charges here.  The Government notified Magistrate Judge Jantz prior to

the hearing that it intended to seek review of any release order.  Magistrate Judge Jantz indicated

that the Government would have until 1:15 p.m. CST (2:15 p.m. EST) to file its motion for stay.[1]

The Government hereby seeks review and revocation of Magistrate Judge Jantz's release

order, pursuant to 18 U.S.C. § 3145, and asks this Court to stay the release order until a hearing on

this motion can be held by this Court.  Based upon the nature of the offense in this case, which

includes the Defendant threatening and extorting a minor to produce and send child pornography,

while taking multiple calculated steps to conceal his true identity, and the Defendant's post-

*Miranda* admission that he did this because he is addicted to masturbation and he cannot control

himself, there is a real concern that, if released on bond, the Defendant will continue to engage in

the conduct that led to the charges in this case.  This is an intolerable risk that the community

cannot and should not have to bear.  Additionally, based upon the fact that the Defendant is facing

a mandatory minimum of fifteen years' imprisonment, has travelled internationally, and has no ties

to the District of Massachusetts, the Defendant poses a serious risk of flight.  Because there are no

conditions or combination of conditions that can eliminate those risks, and the Magistrate Judge's

release plan, which essentially returns the Defendant to the scene of the crime under the watch of

his parents who he managed to deceive for an extended period of time while committing the instant

offenses, is woefully inadequate to address the concerns raised in this case, the Magistrate Judge's

release order should be revoked, and the defendant should be detained pending trial.

---

[1] The Appearance Bond, signed by Magistrate Judge Jantz is attached as Government's
Exhibit 3.  The Order Setting Conditions of Release, signed by Magistrate Judge Jantz is attached
as Government's Exhibit 4.

**The Government's Case**

As is outlined in more detail in the complaint affidavit, the Defendant, Ernesto Herrera, threatened and extorted a minor female (hereinafter referred to as "MINOR A"), residing in the District of Massachusetts, using the Snapchat application[2] and via text message, into producing and sending child pornography to the Defendant.  As the Defendant admitted in his post-*Miranda* interview, the Defendant has an addiction to masturbation.  This addiction led the Defendant to seek out new pornographic material in order to successfully masturbate.  To feed this addiction, the Defendant extorted and blackmailed the most vulnerable members of our community— children.

**A.  Interview with MINOR A**

In February 2021, law enforcement conducted an interview of MINOR A.  Videos of MINOR A had been identified by law enforcement depicting MINOR A and a minor boy, who appeared to be between the ages of 2-4 years old, engaged in sexual conduct.  During the interview, MINOR A provided information regarding four Snapchat usernames that MINOR A met when MINOR A was between the ages of 13 and 16 years old.  Each of these Snapchat usernames played a role in either grooming or exploiting MINOR A to produce videos of herself engaged in various sexual acts as a child and engaging in various acts of self-harm.

One of the Snapchat usernames that MINOR A reported has been identified as one of the Defendant's Snapchat usernames (hereinafter referred to as "Snapchat Username 1").[3]  This

---

[2] Snapchat is a free-access social networking mobile application made by Snap, Inc.  The application is available through the Apple iPhone "App Store" and Google Play, and it provides users a way to share photos, videos and text.  Snapchat is one of the most popular applications for sending and receiving 'self-destructing' messages, pictures, and videos, referred to as "snaps."

[3] The Defendant's Snapchat username was redacted from the publicly filed complaint affidavit in order to protect the integrity of this investigation, which is on-going.  As is outlined in

4

Snapchat username was not in the Defendant's own name, but in the name of another individual, thereby anonymizing the Defendant's identity.

MINOR A advised that Snapchat Username 1 sent MINOR A a message on Snapchat when she was approximately sixteen years old.  Upon accepting the Snapchat Username 1's friend request on Snapchat, MINOR A advised that the Defendant sent MINOR A a video of herself engaged in a sexual act with her dog and threatened to expose her if she did not produce videos of herself for him.  MINOR A advised that Snapchat Username 1 manipulated her to produce what she described as "stretching" videos of herself, which consisted of inserting various items into her vagina.  Snapchat Username 1 also directed MINOR A to engage in sexual acts with her dog, among other things.

### B. Forensic Review of MINOR A's Phone

Following the interview with MINOR A, law enforcement conducted a review of MINOR A's phone.  Law enforcement confirmed that MINOR A became "friends" with Snapchat Username 1 on June 4, 2020.  Law enforcement viewed approximately 73 snaps that were saved within the Snapchat "chat" feature between MINOR A and Snapchat Username 1.  The saved snaps appeared to be snaps that were created by MINOR A and shared with Snapchat Username 1. Several of the snaps consisted of what appeared to be MINOR A engaged in various sexual acts, including inserting various items into her vagina.

Law enforcement also identified a phone number ending in 8121, saved in MINOR A's phone as "blackmailer [followed by four emojis]" (hereinafter, the "8121 NUMBER").  This phone number has been identified by law enforcement as belonging to the Defendant.  Furthermore, the

---

more detail below, from the Defendant's messages, it appears that the Defendant was working in conjunction with other people to extort MINOR A.

8121 NUMBER was identified as being held by Pinger, Inc.[4]  The text messages between MINOR

A and the Defendant, using the 8121 NUMBER, are excerpted below:

| Date/Time | Sender | Message |
|---|---|---|
| 06/04/2020, 11:28:05am (UTC-4) | 8121 NUMBER | Make any new videos |
| 06/04/2020, 11:28:16am (UTC-4) | MINOR A | Who is this |
| 06/04/2020, 11:31:14am (UTC-4) | MINOR A | ? |
| 06/04/2020,12:18:09PM (UTC-4) | 8121 NUMBER | Anymore videos |
| 06/04/2020, 12:19:44pm (UTC-4) | 8121 NUMBER | **I aint been able to see the new the ones lil whore since you locked us out but I have all the other ones** |

\* \* \*

| | | |
|---|---|---|
| 06/04/2020, 12:22:05pm (UTC-4) | 8121 NUMBER | Sent the new videos |
| 06/04/2020, 12:24:22pm (UTC-4) | MINOR A | What new videos |
| 06/04/2020, 12:24:27pm (UTC-4) | MINOR A | I don't know who this is |
| 06/04/2020, 12:24:33pm (UTC-4) | MINOR A | I don't know what your talking about |
| 06/04/2020, 12:24:35pm (UTC-4) | 8121 NUMBER | In your my eyes[5] |
| 06/04/2020, 12:24:37pm (UTC-4) | MINOR A | I'm so confused |
| 06/04/2020, 12:24:51pm (UTC-4) | 8121 NUMBER | **Do I have to send you videos of you** |
| 06/04/2020, 12:24:56pm (UTC-4) | 8121 NUMBER | **You lil whore** |

\* \* \*

---

[4] Pinger is a VoIP (voice over internet protocol) operator that has developed mobile applications that allow Android and iOS users to send and receive text messages and voice calls.

[5] This appears to be a reference to the "my eyes only" section of the Snapchat application, which is a password protected storage application within Snapchat.

| 06/04/2020, 12:28:06pm (UTC-4) | 8121 NUMBER | Send them |
| 06/04/2020, 12:28:09pm (UTC-4) | 8121 NUMBER | Now |
| 06/04/2020, 12:30:53pm (UTC-4) | 8121 NUMBER | I hate waiting cunt |

\* \* \*

| 06/04/2020, 12:32:00pm (UTC-4) | 8121 NUMBER | Do as I say |
| 06/04/2020, 12:32:05pm (UTC-4) | 8121 NUMBER | Idc send them |
| 06/04/2020, 12:32:14pm (UTC-4) | 8121 NUMBER | Or change it back |
| 06/04/2020, 12:32:26pm (UTC-4) | MINOR A | Change what back |
| 06/04/2020, 12:32:47pm (UTC-4) | MINOR A | Ohh |
| 06/04/2020, 12:32:53pm (UTC-4) | MINOR A | Did u have access to my snap |
| 06/04/2020, 12:32:53pm (UTC-4) | 8121 NUMBER | Send the videos |

\* \* \*

| 06/04/2020, 12:33:39pm (UTC-4) | 8121 NUMBER | We all did |
| 06/04/2020, 12:33:48pm (UTC-4) | MINOR A | Who's we |
| 06/04/2020, 12:34:20pm (UTC-4) | MINOR A | I haven't been on or touched that snapChat |
| 06/04/2020, 12:34:25pm (UTC-4) | MINOR A | Is ran by a guy now |
| 06/04/2020, 12:34:27pm (UTC-4) | 8121 NUMBER | **Me and the other 2 masters** |

\* \* \*

| 06/04/2020, 12:40:44 (UTC-4) | 8121 NUMBER | **Send the videos you have with your dog ill be waiting** |
| 06/04/2020, 12:47:55pm (UTC-4) | 8121 NUMBER | **I hate waiting cunt I don't know what you dont understand ay** |

7

| 06/04/2020, 1:14:04pm (UTC-4) | 8121 NUMBER | Blocked |
|---|---|---|
| 06/04/2020, 1:14:24pm (UTC-4) | 8121 NUMBER | **Your videos are going to get leaked to your friends and internet** |
| 06/04/2020, 1:14:45pm (UTC-4) | MINOR A | I'm at work |
| 06/04/2020, 1:14:48pm (UTC-4) | MINOR A | Just give me a bit |
| 06/04/2020, 01:14:52pm (UTC-4) | MINOR A | I'll text u |
| 06/04/2020, 01:15:05pm (UTC-4) | 8121 NUMBER | Dont make me regret this |
| 06/04/2020, 03:23:23pm (UTC-4) | 8121 NUMBER | What time will you be done |
| 06/04/2020, 03:45:59pm (UTC-4) | 8121 NUMBER | ?? |
| 06/04/2020, 03:46:10pm (UTC-4) | MINOR A | 9 |
| 06/04/2020, 03:48:20pm (UTC-4) | 8121 NUMBER | Im not waiting that long |
| 06/04/2020, 03:48:29pm (UTC-4) | 8121 NUMBER | Send some now |
| 06/04/2020, 03:50:36pm (UTC-4) | MINOR A | [MINOR A sent one image depicting an upside down image of female breasts] |
| 06/04/2020, 03:51:03pm (UTC-4) | MINOR A | I don't have any nudes on this phone and I don't have the time to Fucking fight with this guy on my snap |
| 06/04/2020, 03:52:00pm (UTC-4) | 8121 NUMBER | Reset the password |
| 06/04/2020, 03:52:18pm (UTC-4) | 8121 NUMBER | Good girl |
| 06/04/2020, 03:56:00pm (UTC-4) | VICTIM A | **[MINOR A sent an image containing a closeup photograph of a vagina]** |
| 06/04/2020,03:57:57pm (UTC-4) | 8121 NUMBER | Hmm good slut |

\* \* \*

| 06/04/2020, 4:09:42pm (UTC-4) | MINOR A | [Reference to MINOR A's Snapchat username][6] you will not log into that snap |
| 06/04/2020, 04:09:44pm (UTC-4) | 8121 NUMBER | Send the proper log in daddy wants |
| 06/04/2020, 04:09:47pm (UTC-4) | MINOR A | Just add me |

* * *

| 06/04/2020, 04:17:24pm (UTC-4) | 8121 NUMBER | I added  you |

* * *

| 06/04/2020, 04:19:00pm (UTC-4) | MINOR A | **I'm 16** |

* * *

| 06/20/2020, 12:43:46am (UTC-4) | 8121 NUMBER | **What happened to the video sucking the guys dick** |
| 06/20/2020, 12:44:49m (UTC-4) | MINOR A | It's not my snap memory's |
| 06/20/2020, 12:44:55am (UTC-4) | MINOR A | It's on my camera roll |
| 06/20/2020, 12:44:59am (UTC-4) | MINOR A | The bad one is on there |
| 06/20/2020, 12:45:04am (UTC-4) | MINOR A | The dark ones |
| 06/20/2020, 12:45:07am (UTC-4) | MINOR A | There are two |
| 06/20/2020, 12:47:28am (UTC-4) | 8121 NUMBER | Oh |

(emphasis added).  These text messages clearly indicate that the Defendant, knowing MINOR A was, in fact minor, continued to request child pornography from her. The text messages also

___

[6] MINOR A's Snapchat account username is known to law enforcement but redacted here to protect MINOR A's identity.

indicate that, at the time that the Defendant reached out to MINOR A on June 4, 2020, he was already in possession of videos of her engaged in sexual conduct, *i.e.*, child pornography.  He also indicated that he was working with others, who he refers to as other "masters," to exploit MINOR A.  He threatened MINOR A with exposure to her friends and family if she did not continue to make videos for him, and, even when MINOR A told the Defendant that she was at work, he required her to produce child pornography for him.  He referred to MINOR A, a sixteen-year-old girl, as a "lil" whore, a cunt, and a slut.  He referred to himself as "daddy."

### C.  Search of Snapchat Username 1

A federal search warrant was obtained for Snapchat Username 1.  The search warrant return included over one thousand media files that were sent from MINOR A's Snapchat account to Snapchat Username 1.   Several of the media files sent by MINOR A's Snapchat account to Snapchat Username 1 depict child pornography, including videos of MINOR A masturbating, inserting various objects into her vagina, and engaging in sexual acts, including with her dog.

Additionally, in reviewing the Defendant's Snapchat account, law enforcement identified other extortion victims of the Defendant, including other possible minor victims.  For example, in one exchange found in the search warrant return for the Defendant's Snapchat account (Snapchat Username 1), the Defendant asked another Snapchat user whether they were "still sending nudes" and stated that he had some old pictures and videos of that Snapchat user that he recorded.  The Defendant requested that the Snapchat user send new files.  The Defendant then stated that he had all of the Snapchat user's close friends on his Snapchat and sent a file to the Snapchat user.  The Snapchat user responded to the Defendant asking how the Defendant got the image that he sent her and stated that she was a young mom, who was 17 years old, and suffering from depression. The Snapchat user asked the Defendant if he was threatening her with old nudes to get new nudes.

In another exchange on Snapchat between the Defendant and a different Snapchat user, the Defendant asked the Snapchat user if they were still sending nudes and asked the Snapchat user to send more.  The Snapchat user responded no and the Defendant told the Snapchat user to send more or their videos would be leaked.  The Snapchat user told the Defendant that they were a minor and that they were 17 years old.  The Defendant responded that he was going to expose the Snapchat user to her family and that her mother was going to kill her.

### D.  Identification of the Defendant

As is further outlined in the Complaint, law enforcement conducted an extensive investigation to identify the Defendant as the user of both Snapchat Username 1 and the 8121 NUMBER.  This is because the Defendant took measures to hide his identity, including creating a Snapchat account in another person's name, registering email addresses using other persons' names, registering a phone number with Pinger that he used to anonymously text MINOR A, among other things. The Defendant took these steps in order keep his identity secret while he threatened, harassed, and extorted MINOR A for child pornography.

After an extensive investigation, law enforcement identified the Defendant as the user of both Snapchat Username 1 and the 8121 NUMBER and confirmed that the Defendant resided in Chicago, Illinois.  The Government then applied for and received a federal search warrant in the Northern District of Illinois for the Defendant's residence.

### E.  Search of the Defendant's Residence and Interview with the Defendant

On June 3, 2021, federal agents executed the search warrant at the Defendant's residence in Chicago, Illinois.  The Defendant resided in a multi-family house that was owned by his parents. His parents resided on the second floor of the multi-family house, while the Defendant resided on

the first floor in the front unit of the building.  The Defendant's girlfriend of approximately eight years lived with the Defendant in the front unit of the residence.

On June 3, 2021, the Defendant was interviewed by law enforcement at his residence.  The Defendant was provided with his *Miranda* rights, which he waived.  The interview with the Defendant was audio recorded.  The Defendant admitted to creating various Snapchat usernames and email addresses to chat with people.  He stated that he did this out of boredom.  The Defendant further admitted that Snapchat Username 1 was his username.

The Defendant ultimately admitted to logging onto MINOR A's Snapchat account.  The Defendant acknowledged that he spoke to MINOR A from a different username (other than Snapchat Username 1) beginning as early as March or April 2020, prior to contacting her from Snapchat Username 1 in June 2020.  He acknowledged that he contacted MINOR A using a text messaging service as well.

The Defendant acknowledged signing onto MINOR A's Snapchat account and seeing who she was chatting with.  He stated that he would use MINOR A's images to masturbate.  He estimated MINOR A only sent him approximately twenty files.  He thought he may have saved some of the images in his chats in Snapchat.  The Defendant stated that he would find other videos that MINOR A was making for other people when he logged into her Snapchat application.  The Defendant acknowledged that MINOR A was being blackmailed by other people because she had made videos with a minor boy.

During the interview, the Defendant further admitted that he was addicted to masturbating, which included masturbating at home, at work a few times a day, in the morning, and at night.  He advised that he was sometimes late to work because he needed to masturbate.  The Defendant stated that he got to a point where "porn" didn't do it for him anymore.  He was seeking these

images from people directly to masturbate.  He stated he needed more and more material.   He admitted that his addiction was very bad.

The Defendant stated that he tried to delete Snapchat and delete websites but then he would go on a binge and buy twenty pornographic subscriptions in twenty minutes and then wonder what he was doing.  He talked about all the steps that he took to conceal his addiction from his girlfriend, including changing his passwords all of the time and using facial recognition.

Later in the interview the Defendant stated that Pornhub and fake porn didn't do it for him anymore.  He then went to "cams" but that didn't work for him anymore either.  He then went to Snapchat and then to OnlyFans.  He did all of this because of his masturbation addiction.  He said that at one point he had two hundred and thirty subscriptions for pornography.

The Defendant also acknowledged during the interview that he contacted the two other Snapchat users, who identified themselves as minors, outlined above, and threatened them with exposure to their parents if they did not send him naked images.  He estimated that he had reached out to four or five people in total for nude images using his various accounts.

### The Detention Hearing

The detention hearing was held on June 7, 2021, before Magistrate Judge Jantz.   The Court confirmed receipt of the Pretrial Services report along with an addendum.  The Court further confirmed receipt of the victim statement authored by the mother of MINOR A.  Exhibit 1, at 4-5. The Government advised that, to the extent the Court planned to order the release of Herrera, the order would be appealed in the District of Massachusetts.  *Id.* at 6-7.  The Court outlined the procedure for the appeal and advised that she would stay the release order for forty-eight hours from entry of her order.  *Id.*

13

Prior to any argument on the matter, the Court turned to what it called "the merits" and indicated that she had some initial questions. *Id.* at 8. Namely, the Court signaled that it wanted to provide time for any third-party custodian to consider what would be expected of them if she ordered the Defendant released. *Id.* The Court excluded the Defendant's sister from consideration as a third-party custodian based on the fact that she is expecting a child next month. *Id.* at 9. The Court then discussed the logistics of releasing the Defendant to his parent's residence—where he resided while committing the instant offenses—and confirmed that the parent's residence is located within 500 feet of a high school. *Id.* at 10. The Court indicated that it would not consider releasing the Defendant except on home incarceration with location monitoring. *Id.* at 11. Furthermore, the Defendant would need to reside in the unit with his parents, rather than reside in the unit with his girlfriend (though these two units are a part of the same multi-family residence owned by the Defendant's parents). *Id.* The Court went on to outline requirements related to wi-fi and access to electronic devices, if the Defendant was ordered released. *Id.* at 11-15.

The Court then turned to the argument of the parties. *Id.* at 16. The Court acknowledged that this case is, in fact, a presumption case. *Id.* Defense counsel set forth its argument in support of release. Defense counsel noted that the Defendant does not have a criminal history, is a lifelong resident of Chicago, has a solid work history, and family support. *Id.* at 17-18. Defense counsel stated that any risk of flight would be solved by having the Defendant turn his United States passport over to Pretrial Services. *Id.* Defense counsel requested that the Defendant's father serve as a third-party custodian. *Id.*

The Government then outlined the charges against the Defendant and stated that, based on the nature of the offenses, and particularly the fact that the Defendant demonstrated that he was able and willing to target vulnerable victims across the country using an easily concealed mobile

device from the safety of his own home, the Defendant was unable to rebut the presumption in favor of detention applicable to this case. *Id.* at 19. The Government noted that the Defendant had shown, through his actions in this case, that he is adept at creating accounts with anonymous names and anonymous phone numbers in order to conceal his actions and that he did that while residing at the same residence where he would be released. *Id.* The Defendant would be released to his parents, who he managed to conceal his actions from entirely over a lengthy period of time. *Id.* at 19-20.

The Government further proffered that the Defendant would have to travel to Massachusetts for any appearance in this matter and thus any conditions imposed by the Court in Chicago would be difficult to impose while the Defendant is in transit to another part of the country where he has no ties. *Id.* at 20. The Government then went through *all* of the factors outlined in § 3142(g), each of which supported detention in this matter based upon the danger posed to the community by the Defendant, including: (1) the nature and circumstances of the offense, which included working in coordination with others to threaten and extort MINOR A for child pornography, the Defendant's post-*Miranda* admission that he had similarly targeted other females in order to coerce them into providing him with nude images, and the Defendant's admission that he has an addiction to masturbation that requires him to masturbate multiple times per day, including at work, and that he cannot control this addiction and, based on this addiction, he needs to obtain new images directly from the women depicted in the images, which is why he continued to reach out directly to MINOR A for new material; (3) the weight of the evidence, which is strong in this case, where law enforcement has done an extensive investigation, and the Defendant provided a post-*Miranda* recorded statement admitting that he was the user of Snapchat Username 1, among other things; (4) the history and characteristics of the Defendant, including the Defendant's admission that he

has a masturbation problem and no control over his behavior, the fact that the Defendant has been successful in concealing this problem from friends and family, the lack of ties that the Defendant has to the district where he is charged, and concerns regarding a release plan that would allow the Defendant to return to the very place where he engaged in criminal conduct.  *Id.* at 21-28.

The Government further proffered that the Defendant was a serious risk of non-appearance as well based upon the Defendant's lack of ties to Boston, the fact that he is facing a mandatory minimum sentence of fifteen years on the sexual exploitation of children charge and a mandatory minimum of five years on the receipt of child pornography charge, and the Defendant has travelled internationally to Mexico, among other things.  *Id.* at 28.  The Court then continued the hearing until June 9, 2021.

On June 9, 2021, at the continued detention hearing for the Defendant, Magistrate Judge Jantz ruled from the bench that the Defendant would be released with certain conditions in place. The Court stayed its release order for forty-eight hours to allow the Government time to appeal. Exhibit 2, at 71-72.

### Applicable Legal Principles

To justify detention, the government must demonstrate by a preponderance of the evidence that a defendant poses a risk of flight, or by clear and convincing evidence that he is a danger to the community.  18 U.S.C. §3142; *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *see also United States v. Salerno*, 481 U.S. 739, 741 (1987).  In assessing whether suitable release conditions exist, a court must consider the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the accused, including family ties, employment and other factors, and the nature and seriousness of the danger posed by the person's release.  18 U.S.C. § 3142(g).  Where the defendant is charged with an offense

16

involving a minor victim, under *either* section 2251 (sexual exploitation of children) or 2252A(a)(2) (receipt of child pornography), there is a statutory presumption that the defendant should be detained pending trial and that no condition or combination of conditions will reasonably assure his appearance or the safety of the community. 18 U.S.C. §3142(e)(3)(E). This presumption shifts the burden of production to the defendant to present credible evidence that he does not pose a risk of flight or a danger to the community. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). In the absence of credible evidence assuring the appearance of the defendant and the safety of the community, the presumption alone justifies detention. *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *see also United States v. Pierce*, 107 F. Supp. 2d 126, 128-29 (D. Mass. 2000).

Jurisdiction over the review of the release order issued by the Magistrate Judge in the District of arrest lies with this Court, rather than with a judge in the District of arrest, because this Court has original jurisdiction over the charged offenses, pursuant to 18 U.S.C. §3145(a)(1). That section provides that:

> If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, <u>with the court having original jurisdiction over the offense,</u> a motion for revocation of the order (emphasis added).

Title 18, U.S.C. §3145(a) states:

> (a) Review of a release order – If a person is ordered released by a magistrate, . . (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . . The motion shall be determined promptly.

In *United States v. Tortora*, 922 F.2d 880,882 (1st Cir. 1990), the First Circuit held that a district judge must conduct a *de novo* review of a contested detention order issued by a magistrate judge. 922 F.2d at 883 n. 4. *Tortora* mandates that the district court must make an independent

determination of the detention decision, unconstrained by the limits of the magistrate's conclusions or the record established in the original detention hearing.  *See also United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) ("In our view a district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion."). Accordingly, in its discretion, this Court may proceed to rehear the evidence and argument to support detention.  It may take additional evidence from new witnesses or consider arguments not raised previously.  In short, the Court may proceed in whatever way enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the Defendant, as required, and the safety of the community, considering the rebuttable presumption of detention applicable to the Defendant.

**Argument**

Here, the Court does not need additional evidence or argument in order to find that the Defendant should be detained pending trial.  The Defendant has not, and cannot, rebut the presumption in favor of detention that applies in this case.  Furthermore, as outlined in more detail herein, the Defendant cannot be released because he is a danger to the community, and he is a risk of non-appearance.

### A.  The Defendant has Not Rebutted the Presumption in Favor of Detention that Applies to this Case

The Defendant has the burden of production to rebut the presumption that no condition or combination of conditions will reasonably assure his appearance or the safety of the community and the Defendant clearly has failed to meet that burden.  *See United States v. Close*, 550 F.Supp.2d 185, 188 (D. Mass. 2008).  Here, as outlined above, the Defendant relied upon his lack of criminal history (as is often the norm in child exploitation cases), lifelong residence in Chicago (though he

18

is charged in Massachusetts), and strong family ties (though he managed to hide his actions and addiction from those family members), in support of his release.  These assertions simply fail to remove this case from the Congressionally mandated presumption that defendants charged with the sexual exploitation of children pose an ongoing threat to the safety of the community and an ongoing risk of nonappearance.  Many cases charging the sexual exploitation of children involve defendants who similarly have strong community ties and no criminal history, and yet, courts have continually found that the presumption applies and have ordered the defendants detained pending trial.  *See e.g., United States v. Conover*, 12-2080, 2012 WL 4846132, at *5 (D.N.J. Oct. 10, 2012) (finding that the defendant, who was charged with receipt and distribution of child pornography, did not rebut the presumption despite having no criminal history, long-term employment history, and apparent history as a law-abiding citizen); *United States v. Becker*, 209-cr-141, 2010 WL 566719, at *2 (N.D. Ind. Feb. 12, 2010) (affirming magistrate judge's finding that presumption was not rebutted in § 2251(a) case where defendant had insignificant criminal history, was married with kids, and a suitable custodian was proposed); *United States v. Music*, 1:07-CR-21-R, 2007 WL 2067057, at *5 (W.D. Ky. July 16, 2007) (holding that magistrate judge erred in finding that defendant had rebutted presumption of dangerousness because the defendant, charged with interstate transportation of a minor with intent to engage in criminal sexual contact, had no prior criminal history and the charge did not involve forcible compulsion finding that, "no prior criminal history does not automatically mandate release"); *United States v. Harris*, 1:20-cr-00637, Order of Detention Pending Trial, docket entry 26 (E.D. Ill. Oct. 19, 2020) (finding that the presumption was not rebutted in a case charging Harris with a violation of 18 U.S.C. § 2251(a) because the defendant's lack of criminal history in this type of case evidenced the defendant's ability to avoid detection and underscored how easy it is for this crime to go undetected, finding that the

19

defendant's conduct revealed "behavior that the defendant cannot or is unwilling to control, the exact type of conduct Congress had in mind when it chose to apply the presumption to violations of 18 U.S.C. § 2251(a)").   Here, the Defendant has failed to proffer testimony to rebut the presumption applicable to the charged offenses.   Accordingly, he should be detained.

**B.   <u>The Defendant is a Danger to the Community</u>**

The Defendant should be detained because there is clear and convincing evidence that he poses a danger to the community, pursuant to 18 U.S.C. § 3142(f)(1)(A).

Turning first to the first factor outlined in 18 U.S.C. § 3142(g), the nature and circumstances of the charged offense, the sexual exploitation of children and the receipt of child pornography are crimes of violence, which entail a danger to the community.   18 U.S.C. § 3142(g)(1).   The Defendant's conduct in this case is deeply disturbing.   The Defendant preyed on the most vulnerable members of our society—children—to feed his own addiction.   The Defendant's conduct extended beyond MINOR A to include other people that the Defendant attempted to blackmail and extort for nude images using Snapchat, some of these people identified themselves as minors to the Defendant.

When Congress amended Section 2251 to enhance its penalties, Congress "repeatedly stress[ed] that child pornography is a form of sexual abuse which can result in physical and psychological harm, or both, to the children involved." *United States v. Gall*, 13-1266 F, 2013 WL 12192313 at *2 (D.P.R. Nov. 6, 2013) (internal quotation marks and citations omitted). Congress further "found that where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* (internal quotation marks and citations omitted).   "Detaining adults who prey on children for sexual gratification or

20

for the production of child pornography is a legitimate government objective, supporting pretrial detention." *Id.*

In addition to the facts outlined above, in support of detention, the Government provided a letter from MINOR A's mother.  This letter outlines the impact of the Defendant's conduct on MINOR A.   MINOR A's mother details how MINOR A has suffered both physically and emotionally from the Defendant's actions.  MINOR A's mother states that the emotional baggage that MINOR A "carries and will always carry because of this man some days is too much for her to bear."  MINOR A's mother states that the Defendant robbed MINOR A of her innocence, scarred her for life, and that her mother only hopes that one day MINOR A can find inner peace. MINOR A's mother pleads with the Court to detain the Defendant as he poses a risk to children and, specifically, to MINOR A.  Those words have meaning.  The Court should consider them in assessing the dangerousness of this Defendant who was able to have such an impact on MINOR A using an easily concealable handheld device from the comfort of the very home to which he is being released.  This factor clearly favors detention.

Turning to the second factor outlined in 18 U.S.C. § 3142(g)(2), the weight of the evidence in this case is strong.  The Complaint details the extensive investigation that law enforcement did in this case to review the Defendant's Snapchat account and to identify the Defendant as the user of both the Snapchat Username 1 and the 8121 NUMBER.  Additionally, the Defendant admitted in a post-*Miranda* recorded interview that Snapchat Username 1 was his username, that he logged into MINOR A's Snapchat account, and that he reach out to MINOR A via text message, among other things. He further estimated that he reached out to approximately four or five other people for nude images.  Even the Magistrate Judge acknowledged that the weight of the evidence in this case was strong stating, "[w]hen you look at the weight of the evidence, I agree with [the

Government] that it's very strong in this case, particularly given the forensic evidence and the representation that Mr. Herrera made a post-arrest statement that was – detailed the alleged offense in many ways." Ex 2, at 14.  This factor also clearly favors detention.

Turning to the third factor outlined in 18 U.S.C. § 3142(g)(4), this Defendant presents a serious danger to the community.  The Defendant's criminal activity is the type of activity that can be undertaken within the confines of the Defendant's home.  All he needs is access to the internet to continue to feed his addiction and exploit others.  While the Court appointed the Defendant's father as a third-party custodian in this case, the Defendant lived at his father's residence, albeit in a different unit, while he committed the crimes that he is charged with.  Courts have found that certain crimes or conduct is of an "addictive sexual nature that cannot be suppressed simply by a restrictive set of bail conditions." *See United States v. Minnici*, 128 Fed. App'x 827, 829 (2d Cir. 2005); *United States v. Santiago-Muniz*, No. 3:17-CR-326, 2017 WL 6028347, at *3 (M.D. Pa. Dec. 5. 2017).  Preventing the type of highly predatory and addictive sexual behavior which may be completed in relative secrecy with any number of devices that can connect to the internet is simply beyond the capacity of pretrial services, or any parent, to effectively monitor over an extended period of time.  *See Santiago-Muniz*, 2017 WL 6028347, at *3; *see also United States v. Petersen*, No. 17-CR-00259-CRB-1/JD, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017) (overruling a magistrate judge and denying bond to defendant charged with possession of child pornography where the proposed conditions included home incarceration with the father being with the defendant "24 hours a day," no contact with minors, no access to internet or devices that could access the internet, and a $500,000 secured bond, finding that, "[t]he fact that the conduct underlying the charge against him occurred while he lived in his father's home substantially undercuts any assurance that might be derived from his father's offer to be a full-time custodian.").

That is particularly true where, as in this case, the Defendant has shown that he is adept at disguising his identity while using the internet.

Finally, turning to the final factor outlined in 18 U.S.C. § 3142(g)(3), the history and characteristics of the Defendant, the Government would direct the Court's attention to consideration of the character and mental condition of the Defendant. Here, the Defendant spoke at length about his addiction to masturbation in his post-*Miranda* interview. The Defendant advised that he needs new material in order to feed this addiction. And while he has tried to delete Snapchat and put an end to this problem, he would then go on a binge and subscribe to multiple pornography sites. The Defendant stated that he had approximately 230 subscriptions at one point in time. This characteristic and mental condition of the Defendant, along with the Defendant's lack of ties to the District of Massachusetts, support detention in this case based upon this factor.

For all of these reasons, the Defendant should be detained because he is a serious danger to the community.

### C.  The Defendant is a Risk of Flight

The Defendant should further be detained because he is a risk of flight, pursuant to 18 U.S.C. § 3142(f)(2)(A). This Defendant has never served a day in jail and he is now facing a mandatory minimum sentence of fifteen years in prison. There is no greater incentive to flee. Furthermore, the Defendant's guidelines range is likely much higher based upon his conduct in this case. A preliminary estimate of the Defendant's guidelines range is 360-life before acceptance of responsibility.

Additionally, prior to the pandemic, the Defendant travelled almost yearly to Mexico. Furthermore, the Defendant lacks ties to the District of Massachusetts where he is charged with this offense and, under the terms of his release, would be expected to travel here with his sister

serving as a third-party custodian for those trips.  This "safeguard" for travel purposes is simply inadequate to assure the Defendant's appearance in this district on these charges.

For all of these reasons, the Defendant should be detained because he poses a serious risk of nonappearance.

### Conclusion

The Defendant has failed to rebut the presumption in favor of detention established by both charges against the Defendant.  Furthermore, the facts set forth above establish by clear and convincing evidence that the Defendant is a danger to the community and by a preponderance of the evidence that the Defendant is a risk of flight.  For these reasons, there are simply no conditions or combinations of conditions available to release this Defendant, and those put in place by the Magistrate Judge in the Northern District of Illinois are woefully inadequate.  Accordingly, this Court should revoke the order of release and detain Herrera pending trial in the District of Massachusetts.

Respectfully Submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:    */s/ J. Mackenzie Duane*
J. Mackenzie Duane
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3654
Mackenzie.duane@usdoj.gov

24

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion will be sent to counsel for defendant in the Northern District of Illinois and in the District of Massachusetts.

*/s/ J. Mackenzie Duane*
J. Mackenzie Duane
ASSISTANT UNITED STATES ATTORNEY