1                 IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3  UNITED STATES OF AMERICA,      )  Docket No. 21 CR 361
                          )
4              Plaintiff,    )  Chicago, Illinois
                          )  June 9, 2021
5           v.           )  12:11 p.m.
                          )
6  ERNESTO HERRERA,           )
                          )
7             Defendant.    )

8

    TRANSCRIPT OF PROCEEDINGS - Telephonic Detention Hearing Part 2
9            BEFORE THE HONORABLE BETH W. JANTZ

10  APPEARANCES:

11

    For the Government:    MR. PATRICK M. MOTT
12                      Assistant United States Attorney
                        Honorable John R. Lausch Jr.
13                      United States Attorney
                        219 S. Dearborn Street, 5th Floor
14                      Chicago, IL 60604

15

    For the Defendant:     MS. JASMINE J. JOHNSON
16                      Federal Defender Program
                        55 E. Monroe Street, Suite 2800
17                      Chicago, IL 60603

18

    Also Present:          MR. ERNESTO HERRERA
19                      OFFICER CARLA TRAMONTE, Pretrial Services
                      MR. JOSÉ PIÑA, Court Interpreter
20                      MR. ERNESTO HERRERA SR.
                      MS. ROCIO HERRERA
21                      MS. VERONICA ARTEAGA

22

    Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
23                      Official Court Reporter
                      219 S. Dearborn Street, Room 1224
24                      Chicago, IL 60604
                      312.435.6053
25                      laura_renke@ilnd.uscourts.gov

1      (In open court via telephone; defendant present.)

2           THE CLERK:  Do we have the government on the Herrera

3  matter?

4           MR. MOTT:  Yes.  Patrick Mott on behalf of the United

5  States.

6           THE CLERK:  Do we have defense counsel?

7           MS. JOHNSON:  Yes.  Jasmine Johnson present.

8           THE CLERK:  Thank you.

9           Do we have a pretrial officer?

10           OFFICER TRAMONTE:  Yes.  Hi.  Carla Tramonte, present.

11           THE CLERK:  I believe I see the court reporter.

12           Do we have our interpreter?

13           THE INTERPRETER:  Yes.  By the interpreter.

14           Good afternoon.  José Piña.

15           THE CLERK:  Thank you, José.

16           Can you ask whether or not we have Mr. Herrera on the

17  line?

18           THE DEFENDANT:  Yes.

19           THE CLERK:  Are we expecting anyone else?

20           MS. JOHNSON:  I believe that the sister is on the line

21  as well, Ms. Herrera.

22           MS. HERRERA:  That is correct.  Rocio Herrera is

23  present.

24           THE CLERK:  Thank you.

25           MS. ARTEAGA:  My name is Veronica.  I'm also --

1   Ernesto's girlfriend.  I'm on the line as well.

2         THE CLERK:  Thank you.

3         Are we ready to proceed?

4         MS. JOHNSON:  Is Mr. Herrera on the line?

5         THE DEFENDANT:  Yes.

6         MS. JOHNSON:  Okay.  Yes, we're ready to proceed.

7         THE INTERPRETER:  By the interpreter.

8         If I may interrupt.  Will any party be requiring

9   interpreting services?

10        THE DEFENDANT:  Yes.

11        MS. JOHNSON:  His father.  Mr. Herrera requires the

12   services.  At our last court hearing, he actually called the

13   interpreter.  And it was done simultaneously, but we could not

14   hear it.

15        THE INTERPRETER:  Very well.

16        THE CLERK:  Case No. 21 CR 361, Defendant No. 1,

17   U.S.A. v. Ernesto Herrera.

18        THE COURT:  Good afternoon, everyone.  This is Judge

19   Jantz.  Everyone put their introductions on the record.  We'll

20   start with government counsel first.

21        MR. MOTT:  Good afternoon.  Patrick Mott on behalf of

22   the United States.

23        THE COURT:  How about for the defendant.

24        MS. JOHNSON:  Good afternoon.  Jasmine Johnson here

25   for Mr. Herrera.

1          THE COURT:  Okay.

2          Mr. Herrera, can you hear us okay?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.

5          And do we have our pretrial services officer on the

6     line?

7          OFFICER TRAMONTE:  Good afternoon.  Carla Tramonte,

8     pretrial services.

9          THE COURT:  Thank you.

10          And, Mr. Piña, are you there as our court interpreter?

11          THE INTERPRETER:  Yes, your Honor.  Good afternoon

12     again.  José Piña, Spanish interpreter, to interpret for

13     Mr. Ernesto Herrera.

14          THE COURT:  Great.  Thank you.

15          And let's pause here for a second just to work out

16     logistics.

17          So as Ms. Johnson pointed out, during the last

18     hearing, since it was the defendant's father who needed

19     translation services, Mr. Carbajosa, I believe, had kind of a

20     side call where he would simultaneously translate for

21     Mr. Herrera's dad.  Mr. Piña, would that make sense in this

22     case, or what would you recommend?

23          I anticipate this to be a very long hearing, longish

24     as these things go.  And so -- but I'm -- I obviously want him

25     as the proposed third-party custodian to understand everything.

1     So what do you suggest, Mr. Piña?

2     THE INTERPRETER:  Your Honor, my suggestion would be

3  for us to connect a second telephone line specific for Spanish

4  with Mr. Herrera Sr.

5     THE COURT:  Okay.

6     THE INTERPRETER:  And I can provide a number here, and

7  we can have that connected in a moment.

8     THE COURT:  Very good.  Let's do that.

9     THE INTERPRETER:  Very well, your Honor.  Thank you.

10     (312) 208-5635.

11     THE COURT:  And, Mr. Piña, you may need to ask

12  Mr. Herrera's dad in Spanish to do what you need him to do.  I

13  believe he's on the line, but obviously he'd need the Spanish

14  directions.

15     THE INTERPRETER:  Yes, your Honor.

16     By the interpreter, your Honor.

17     I have provided the number to Mr. Ernesto Herrera, the

18  father, and he will be calling me in a moment.

19     THE COURT:  Great.  Thanks for doing that, Mr. Piña.

20     THE INTERPRETER:  By the interpreter, your Honor.

21     I am ready to proceed in the simultaneous mode for

22  Mr. Ernesto Herrera's dad.

23     THE COURT:  Okay.  Thank you very much.  Thank you,

24  Mr. Piña.

25     Okay.  And let me just confirm then if we have the

 1 | third-party custodian on the line, who is Mr. Herrera's father.

 2 | MR. HERRERA SR.: Yes.

 3 | THE COURT: Very good.

 4 | And can you please state your full name for the

 5 | record, sir.

 6 | MR. HERRERA SR.: Ernesto Herrera.

 7 | THE COURT: Thank you.

 8 | Okay. And do we have Mr. Herrera's sister on the

 9 | line?

10 | MS. HERRERA: Yes, your Honor. I am present.

11 | THE COURT: Can you please state your full name.

12 | MS. HERRERA: Rocio Herrera.

13 | THE COURT: Okay.

14 | And how about -- do we have Mr. Herrera's girlfriend

15 | on the line?

16 | MS. ARTEAGA: Yes, I'm here.

17 | THE COURT: Okay, ma'am. And can you please state

18 | your full name.

19 | MS. ARTEAGA: Veronica Arteaga.

20 | THE COURT: Okay. Thank you very much.

21 | Okay. So we took an adjournment from the last

22 | hearing, which took place on June 7th, (1) for this Court to

23 | consider all of the excellent arguments of counsel and the

24 | other -- there's pieces of evidence that have been presented;

25 | (2) to allow the family members in this case to consider the

1  nature of the charges pending against Mr. Herrera based on the

2  government's presentation of them; (3) for family members to

3  consider the significant responsibilities that would be asked

4  of them if Mr. Herrera were released; and, finally, for

5  pretrial services to interview Mr. Herrera's girlfriend,

6  Veronica, and to submit an addendum as to whether she would be

7  willing to restrict her own access to electronic devices in an

8  effort to remove from the property as much electronic device

9  access as possible.

10  And the Court has now received that pretrial services

11  addendum and thanks pretrial for their continued work.

12  Given all of this, Ms. Johnson, is Mr. Herrera and his

13  family willing to proceed at this point?

14  MS. JOHNSON:  Yes, your Honor.

15  THE COURT:  Okay.  And I should ask.  Does either

16  counsel, either Mr. Mott or Ms. Johnson, have any further

17  argument building upon the last hearing or in response to the

18  addendum that was filed by pretrial services?

19  We'll start with Mr. Mott.

20  MR. MOTT:  No, your Honor.

21  THE COURT:  Okay.

22  Ms. Johnson, anything further?

23  MS. JOHNSON:  No, your Honor.

24  I did speak with Mr. Herrera.  He does understand all

25  of the conditions that the Court announced during the last

1  court hearing, and he accepts all of them.

2          THE COURT:  Okay.  Very good.

3          So let me -- I'm prepared at this time to make the

4  Court's ruling.  Let me start to do that.

5          The matter comes before the Court at the request of

6  the government to detain the defendant, Ernesto Herrera,

7  pending the trial of this matter.  The parties have proceeded

8  by proffer, and I've considered all of their arguments that

9  were made at the last hearing, and I thank both counsel for

10  very detailed and effective arguments in that regard.

11          I've also considered a victim statement submitted by

12  the victim's mother.

13          I've considered statements by various family members

14  at the last hearing and representations from Ms. Johnson about

15  the family's willingness to participate in what would be asked

16  of them by the Court here.  And I'll be admonishing them

17  further today and certainly giving the government any

18  opportunity to do further admonishment if it deems appropriate.

19          I've also considered pretrial's recommendation in this

20  matter, which is for release.  Although I would say that, as

21  always, I very much appreciate pretrial's work, I intend to

22  impose conditions that are even more stringent and strict than

23  the supervision and conditions that have been proposed by

24  pretrial, and I'll be going through those in detail.

25          In considering the government's request for detention,

1    the Court's guided by several principles.  First, at all times

2    Mr. Herrera is presumed innocent.  Nothing in this hearing that

3    takes place takes away that presumption.  This hearing isn't

4    about whether he's guilty or innocent; rather, the purpose of

5    this hearing is to determine, notwithstanding that presumption

6    of innocence, whether or not he should be detained pending

7    trial.

8            When doing that, the Court has to look at the Bail

9    Reform Act.  And a defendant must be released prior to trial

10   unless a judicial officer such as myself finds that no

11   conditions or combination of conditions exist that will

12   reasonably assure the appearance of the defendant or will

13   reasonably assure the safety on either a person or the

14   community.

15           And I would note -- pause there and note the Bail

16   Reform Act requires a reasonable assurance.  It does not

17   require a one hundred percent assurance.  That was the way that

18   Congress decided to write that statute.

19           In this case the government is entitled to a

20   rebuttable presumption of detention based on the nature of the

21   charge against Mr. Herrera -- charges, I should say.  And the

22   defense -- Ms. Johnson didn't dispute that a rebuttable

23   presumption is present in this case, but as I said, it is a

24   presumption that is rebuttable, which means it can be overcome

25   by the defendant with sufficient evidence.  And the case law

1   instructs us that that burden, to overcome that presumption, is

2   not a heavy one.

3           Here I do find that the defendant has offered evidence

4   sufficient to rebut the presumption of detention, and that is

5   going to be based on analysis of the 3142(g) factors from the

6   Bail Reform Act, for which I also find that release on

7   conditions is appropriate.  And I'll be going through that

8   analysis in much greater detail.

9           But the initial conclusion and finding is that the

10  defense has rebutted the presumption both with respect to

11  appearance and safety of the community.  I would note, however,

12  that the presumption doesn't fall away.  It's still one factor

13  to be considered by this Court in determining the question of

14  release or detention.

15          So let me now turn to the 3142(g) factors outlined in

16  the Bail Reform Act, and, indeed, that act requires the Court

17  to consider those.  In considering all of those factors -- and

18  I'll be going through them one at a time -- I find that there

19  is a very strict combination of conditions that will reasonably

20  assure both Mr. Herrera's appearance as well as the safety of

21  the community.

22          Let me go through them one at a time, as I said.

23          So, first, Mr. Herrera's family ties and length of

24  residence in the community.  He's a lifelong resident of the

25  community and has extremely strong family ties and support.

1    Indeed, not one but three family members here have stepped up

2    and volunteered to serve as kind of part of a supervision

3    network and team that the Court is going to require in this

4    case, and I'll lay out my conditions in that regard.  But

5    that's certainly a factor to be considered is the strong family

6    ties in this case.

7          Employment.  He has a very consistent record of

8    employment, but given that he would have the potential for

9    Internet access at work, this Court intends to impose home

10   incarceration with location monitoring.  So he will not be able

11   to leave his parents' residence.

12         When I say "his parents' residence," I understand that

13   there's several units in the building.  What I mean by that is

14   he is to live in the unit in that building in which his parents

15   reside, and he is not to be residing in what was his previous

16   residential unit in that building with his girlfriend.  He

17   needs to be in his parents' presence at all times in that unit.

18   So he will not be allowed to leave that unit except for

19   residential -- or excuse me -- medical emergencies and legal

20   responsibilities as ordered by the Court.

21         So it is a good factor for him that he has a

22   consistent employment record, but he will not be permitted to

23   continue that employment outside the home given that he would

24   have potential for Internet access through that employment.

25         Criminal record.  He has absolutely none, not even any

1  arrests.  I realize that an argument often made in sexual

2  exploitation and child pornography cases is that often such

3  defendants don't have a record because they're good at hiding

4  their alleged crimes.  But this Court, at least, concludes that

5  that presumption is really at odds with the presumption of

6  innocence itself.  Rather, all the Court can go on here is what

7  is Mr. Herrera's criminal record, and there is none.  And

8  that's what the Court has taken into account.

9          Next is the nature and circumstances of the alleged

10 offense.  And here too, I consider the nature and seriousness

11 of the danger to the community to be posed by Mr. Herrera's

12 release.  There is no doubt in reading the charging document

13 here that the allegations in this case are very, very serious

14 and deeply, deeply troubling.

15         And I would add the Court has read not only the

16 charging document, but the victim statement from the victim's

17 mother, which is also very powerful.  And nothing should be

18 taken today as taking away from the seriousness of the

19 allegations and what the victim's mother presented.  The Court

20 takes that very seriously.

21         Nevertheless, those considerations are just one factor

22 to consider in the release or detention analysis.  And here the

23 Bail Reform Act instructs the Court to see whether there is a

24 combination of conditions that will reasonably assure the

25 safety of others.

1         Here we have an alleged offense that took place by

2  electronic means and so the focus is on the very strict set of

3  conditions that will mitigate and minimize any risk that the

4  defendant has access to any electronic devices with an Internet

5  connection and indeed will not even be able to leave his own

6  parents' residence.  That is why the Court is ordering home

7  incarceration with location monitoring.

8         The Court will also be requiring the third-party

9  custodian, his father, who is retired, to be home with him at

10  all daytime hours, which is essentially a belt-and-suspenders

11  approach given the proximity of his parents' unit to a school.

12  So he's not only going to have location monitoring, but also

13  his dad's physical presence with him at all daytime hours when

14  children could be present at that school.

15         There was an argument made that -- it's often made in

16  cases such as these that, you know, perhaps the third-party

17  custodians are not appropriate because these alleged offenses

18  took place on their watch.  Different circumstance in this

19  case, and let me explain why.

20         So he was previously living in his own unit with his

21  girlfriend.  He's now going to be living with his parents.

22  He's going to have a new environment, new supervision.  He has

23  supervisees who now know to look for alleged criminal activity.

24         Furthermore, he's going to have a lockdown of

25  electronic devices.  He's going to have a restricted access to

1    his devices.  And none of those conditions was he was facing

2    before, so the Court does see a very different supervision

3    landscape that will be laid out here.

4           Government also made the argument that there appear to

5    have been others involved in this alleged offense.  The Court

6    concludes based on the charging document that's certainly a

7    possibility.  And the government had the understandable concern

8    that those other individuals may intimidate witnesses or

9    victims.

10          That's, unfortunately, going to be the case whether

11   Mr. Herrera is inside the jail or at his parents' residence

12   with no Internet access.  It's not going to affect,

13   unfortunately, whether or not those other individuals continue

14   to engage in criminal activity.

15          When you look at the weight of the evidence, I agree

16   with Mr. Mott that it's very strong in this case, particularly

17   given the forensic evidence and the representation that

18   Mr. Herrera made a post-arrest statement that was -- detailed

19   the alleged offense in many ways.

20          But the case law also tells us that the weight of the

21   evidence is the least important of the factors, and that's

22   because it's to be determined.  This case will be litigated

23   once Ms. Johnson -- or excuse me -- once Mr. Herrera's attorney

24   in the charging district gets the discovery.  And that's why

25   the weight of the evidence is the least important of the

1     factors.  But the Court has, nevertheless, considered it and

2     agrees with the government that the weight of the evidence is

3     strong in this case.

4           In terms of the defendant's physical and mental

5     condition, we have here no history of a pattern of drug or

6     alcohol abuse that would contribute to further criminality.

7           We do have government's representation that

8     Mr. Herrera gave a post-arrest statement in which he admitted

9     that this sort of conduct is essentially a compulsion for him,

10    and that was of concern to the government and it's a very

11    understandable argument.

12          As the Court sees it, the compulsive nature of such

13    activity is almost definitional in these kinds of cases with

14    respect to sexual exploitation of children and child

15    pornography.  So taken to its logical conclusion, that would

16    require detention in all cases charging such crimes, and that

17    can't be the rule that comes from the Bail Reform Act or even

18    the presumption of detention for such charges because that

19    presumption is rebuttable.

20          I think -- I don't think -- I know there may be a

21    different conclusion here if this was a defendant who had

22    reoffended.  That may lead to a different conclusion as to

23    detention.  But we don't have that in this case.  We have no

24    criminal history in Mr. Herrera's ledger.

25          I will, however, given the government's

1   representations about Mr. Herrera's statement order mental

2   health treatment at the direction of pretrial services.  That

3   may have been logistically difficult in the past given the need

4   for in-person treatment.  But given June as we've seen in our

5   community with respect to COVID, perhaps there's a way to do

6   that, hopefully virtually, so that Mr. Herrera will be ordered

7   to participate in mental health treatment as directed by

8   pretrial services, and that will further address that concern

9   on the part of the government.

10          So in summary, the Court reasoned here that if the

11  propositions about the compulsive nature of such alleged crimes

12  or the challenges associated with restricted Internet access in

13  today's world were to be applied categorically in all such said

14  exploitation matters, statutory presumption would become

15  irrebuttable and no defendant in these cases could ever be

16  released because no custodianship or other conditions could

17  ever reasonably assure community safety.  If Congress had

18  intended for the statutory presumption to be irrebuttable --

19  irrebuttable, I should say -- it would have said so, and it did

20  not.

21          Rather, the application of the presumption in the

22  Section 3142(g) factors is based on an individualized

23  determination in each case such as the one the Court has

24  analyzed here, going through the individual factors as they

25  apply to Mr. Herrera's case and indeed tailoring very strict

1  supervision conditions the Court intends to impose, which

2  include, as I said, home incarceration, location monitoring,

3  physical presence of a third-party custodian during all daytime

4  hours, and reasonable assurance that Mr. Herrera will not have

5  access to any electronic devices with Internet connectivity.

6  And I'll be going through that in more detail.

7        Before we move on to the imposition of conditions and

8  the admonishment of the family members here, Ms. Johnson, do

9  you think I missed any arguments in favor of release?

10        MS. JOHNSON:  No, your Honor, you did not.

11        THE COURT:  Okay.  Mr. Mott, did I fail to address any

12  of the government's arguments?

13        MR. MOTT:  You may be getting to this, your Honor.

14  But the government did raise concerns about the nature of the

15  defendant's travel to the charging district.  I know that the

16  Court --

17        THE COURT:  Yes.

18        MR. MOTT:  -- discussed those, the conditions

19  affecting him in Chicago, but I don't think the Court has

20  addressed that as well.

21        THE COURT:  I absolutely will, yes.  But thank you for

22  flagging it.

23        I will be imposing a condition that -- as I understand

24  it, we'll hear from his sister that she's willing to accompany

25  him on any in-person trips that are required to the charging

1    district, that there is literally a physical supervision

2    presence with him to make sure he has no Internet access during

3    those trips when they are required to be in person, and I will

4    be imposing that.

5          I should also say at the end of imposition of

6    conditions, I'm certainly going to give the government an

7    opportunity, and pretrial, to add any additional if they see

8    fit and have the Court consider that.  But I will be addressing

9    that, Mr. Mott.

10         Anything else that the government -- any other

11   arguments from the government that, Mr. Mott, you think I

12   missed?

13         MR. MOTT:  No, your Honor.

14         THE COURT:  Okay.

15         So what I'd ask Mr. Mott to do is if you could please

16   prepare the release order as we go through the conditions here.

17   And then, as I said, the government and pretrial services has

18   an opportunity to let me know if I missed any.  Then run those

19   by Ms. Johnson and then get those to the Court for final review

20   and signature.

21         We're going to be going through now -- I want

22   Mr. Herrera, the defendant; his father, also Mr. Herrera; his

23   sister, Ms. Herrera; and his girlfriend, Veronica, to pay good

24   attention here because what we're going to be doing is going

25   through all of the rules that Mr. Herrera has to follow and the

1  penalties for violation of those terms and then get

2  admonishment of Mr. Herrera and his family members if they're

3  willing to do that.

4      So just to confirm, I just want to make sure we have

5  everyone still on the line and paying attention.

6      Mr. Herrera, Mr. Ernesto Herrera, are you still with

7  us?  Defendant, Ernesto Herrera, you're still there?

8      THE DEFENDANT:  Yes, yes.

9      THE COURT:  Okay.  Very good.

10      And how about Mr. Herrera, his dad.

11      MR. HERRERA SR.:  Yes.

12      THE COURT:  Okay.  And how about his sister,

13  Ms. Herrera.

14      MS. HERRERA:  I am still here, your Honor.

15      THE COURT:  Okay.  And how about Veronica, his

16  girlfriend.  Are you still there?

17      MS. ARTEAGA:  Yes, I'm still here.

18      THE COURT:  Okay.  Very good.

19      So what I'm going to be doing is going through all the

20  rules, making sure family members understand the seriousness

21  and the responsibilities which they're undertaking and making

22  sure they're freely and voluntarily undertaking those

23  responsibilities.

24      At the end, I also will be addressing a stay of this

25  order for 48 hours out of respect and comity for the charging

1   district, to allow them to get an appeal on file if they choose

2   to do so.

3          Let me start going through the conditions.

4          So Mr. Herrera cannot violate any federal, state, or

5   local laws while on release and must cooperate in the

6   collection of a DNA sample if authorized by statute.

7          He must advise the Court or the pretrial services

8   office in writing if he makes any change of residence or

9   telephone number.  This one cannot be overstated because he is

10  absolutely required to live in his parents' residential unit.

11  That is the term of his release.  And so no change will be

12  permitted with that without Court authorization.

13         He must appear in court for all required appearances,

14  whether that be in person or telephonic.  The assigned district

15  judge will set the schedule in the District of Massachusetts.

16         Mr. Mott, do we have a date yet by which he needs to

17  appear?

18         MR. MOTT:  I do not have one, your Honor, but I'll ask

19  Boston.

20         THE COURT:  Okay.  Very good.

21         And so I'd ask Mr. Mott and Ms. Johnson to stay in

22  contact about that, and I will at Mr. Mott's good suggestion

23  address the travel issue as we go through the conditions here.

24         Finally -- I shouldn't say finally.  There's going to

25  be a lot we go through here.

1          But, Mr. Herrera, if you are convicted at the end of

2     this case and sentenced to a prison term, you have to show up

3     for that prison term as well.

4          This is going to be an unsecured bond given the

5     relative finances of the family here.  Mr. Herrera does have

6     Court-appointed counsel, and so that's reflective of his

7     financial resources.  It's going to be unsecured bond, but I'm

8     happy to hear from the government on what amount you'd like

9     that bond in.

10          MR. MOTT:  I think perhaps $10,000, your Honor.

11          THE COURT:  Okay.  Very good.

12          So there will be a $10,000 unsecured bond.  What that

13     means, Mr. Herrera, is that you don't have to put up any money

14     to be released from court today -- or be released from custody,

15     I should say.  But if you were to break the rules, you might

16     owe $10,000 to the government.

17          The bigger problem is you're going to be back in jail.

18     And given the seriousness of this case and the stringency of

19     these conditions I have laid out, the rules will be strictly

20     enforced by any Court.  If there are any violations, very

21     likely you're looking at ending up back in jail.  You need to

22     absolutely follow all of these.

23          With respect to the other conditions, as I said, I'll

24     be appointing his father as his third-party custodian.  He

25     needs to live in his parents' residential unit at all times,

1    and I'll be admonishing his father on that.

2         He is to submit to the supervision of pretrial

3    services, and he has to call them within 24 hours of release.

4    The contact number will be on the paperwork.

5         Ms. Johnson, do you know the status of his passport?

6         MS. JOHNSON:  Your Honor, I believe -- if pretrial

7    services is not in possession of it, we will make sure that

8    they are in possession of it today.

9         THE COURT:  Officer Tramonte, do you know what the

10   status of the passport is?

11        OFFICER TRAMONTE:  Your Honor, pretrial services.

12        We are not in possession of his passport.  And it's my

13   understanding from speaking with the verification source that

14   the parents have it in their residence.

15        THE COURT:  Okay.  So what would you suggest, Officer,

16   for the -- for that passport being turned over to pretrial

17   services?

18        OFFICER TRAMONTE:  If there is a family member that

19   could bring it to our building.  If that's not physically

20   possible, I guess it could be mailed Certified Mail.  But

21   hopefully there is a family member that could physically bring

22   it to the building.

23        THE COURT:  Okay.  I'm going to order physical

24   delivery.  And let's do that within -- what is pretrial and the

25   government comfortable?  How many hours of release would you

1  like that physically delivered to pretrial services?

2  OFFICER TRAMONTE: We would ask for 24 hours, your

3  Honor.

4  THE COURT: Is that Ms. Johnson?

5  MS. JOHNSON: Yes, your Honor. I just was going to --

6  I was going to suggest 24 hours. But I do understand that the

7  Court -- that this ruling will be stayed for 48 hours. But I

8  was going to suggest 24 hours as well. That's the norm. And I

9  believe there's a drop box.

10  Or if the pretrial officer wants it to be physically

11  taken to the office, that can be done too.

12  THE COURT: Officer Tramonte, are you comfortable with

13  24 hours -- within 24 hours of Mr. Herrera's release? And, you

14  know, if there's not a drop box, that would need to be during

15  business hours so that there would be understandable --

16  OFFICER TRAMONTE: Yes, your Honor. That's fine. The

17  drop box --

18  THE COURT: -- flex there. But --

19  OFFICER TRAMONTE: I apologize.

20  THE COURT: Oh, go ahead, Officer.

21  OFFICER TRAMONTE: Yes. The drop box is in the lobby,

22  and that's open as long as the lobby is open, or our office is

23  an option as well, in the same building.

24  THE COURT: Okay. Mr. Mott, is that okay with you?

25  MS. JOHNSON: And also --

Case 1:22-cr-00361-SHS Document 68 Filed 10/02/24 Page 24 of 41
Case 1:22-cr-00361-SHS Document 44 Filed 06/10/24 Page 21 of 41 PageID #: 91

57

1        MR. MOTT:  I mean, if -- is it -- is it the -- is it

2   our understanding that the passport is already in the custody

3   of the family at the residence, in which case could we ask for

4   it to be delivered within 24 hours of today?

5        THE COURT:  Ms. Johnson, do you know if his family

6   members know where it is?

7        MS. JOHNSON:  I would need to speak with them.  But I

8   know that they'll be able to get it within 24 hours of the

9   release.

10        THE COURT:  Right.  I just don't -- I don't know that

11   we know at this point whether or not family members can find

12   it -- right? -- without Mr. Herrera's assistance.

13        MS. JOHNSON:  Your Honor, if I may.  If I may ask his

14   sister who is on the line.

15        Attorney Herrera, do you know whether or not your

16   parents know where it's at right now?

17        MS. HERRERA:  Attorney Johnson, it is my understanding

18   that my parents have located the passport and that they are

19   ready to turn it in.  My father can let us know if that's not

20   correct.  But I believe that they do have it.

21        THE COURT:  Okay.  Mr. Herrera Sr., can you confirm,

22   sir, that you know where your son's passport is?

23        MR. HERRERA SR.:  Yes.

24        THE COURT:  Okay.  Very good.

25        So I will require the family to turn that over to

1    pretrial services within 24 hours of this hearing since that

2    won't necessitate Mr. Herrera's involvement.  And, Ms. Johnson,

3    you can work with pretrial to help the family with the

4    directions to do that.

5              Further -- go ahead, Ms. Johnson.

6              MS. JOHNSON:  My apologies, your Honor.

7              So just so I can clarify, so 24 hours within this

8    hearing, not within 24 hours of the release?

9              THE COURT:  Correct.

10             MS. JOHNSON:  Okay.

11             THE COURT:  Mr. Herrera is not to obtain passport or

12   any other international travel document.

13             He is to abide by home incarceration.  I'll be

14   explaining what that is.

15             And as I noted, I'll be imposing the requirement that

16   any in-person travel that's required to the District of

17   Massachusetts, he has to be accompanied by his sister,

18   physically accompanied by his sister.

19             Ms. Herrera, are you willing to do that, ma'am?

20             MS. HERRERA:  Yes, your Honor.

21             THE COURT:  Okay.  Very good.

22             And I'll be admonishing all the family members at the

23   end in totality here.

24             You are to avoid all contact, either directly or

25   indirectly, with any person who is or may be a victim or

1  witness in the investigation or prosecution, including Minor A,

2  Minor A's family and friends, and any other minors.

3         Indeed, no minors can visit the parents' residential

4  unit, and that includes any family members.  I realize that's a

5  hardship because I understand Ms. Herrera is expecting a child,

6  and there are probably other minor family members.  But out of

7  an abundance of caution, no minors are allowed in the parents'

8  residential unit where Mr. Herrera will be residing.

9         As I said, I'll be requiring Mr. Herrera Sr. to be

10  with Mr. Herrera at all daytime hours in that unit so as there

11  can be an assurance that Mr. Herrera does not leave the unit

12  while there are minors present at a nearby school.

13         I will order that Mr. Herrera get medical or

14  psychiatric treatment as directed by pretrial services.

15         He cannot possess a firearm, destructive device, or

16  other weapon.

17         He cannot use alcohol excessively.

18         He cannot use or unlawfully possess a narcotic drug or

19  other controlled substance unless prescribed by a licensed

20  medical practitioner.

21         Let me pause there.  Marijuana is now legal in the

22  State of Illinois.  It is still illegal federally, so

23  Mr. Herrera cannot use any drugs, including marijuana.

24         I am imposing home incarceration.  What that means is

25  Mr. Herrera is restricted to his parents' unit 24 hours a day,

1   except for medical emergencies and court appearances or other

2   activities approved by the Court of a legal nature.

3          I'm going to be imposing location monitoring as

4   directed and chosen by pretrial services.

5          Mr. Herrera has to report as soon as possible to his

6   pretrial services officer any contact with law enforcement of

7   any type.

8          Further, with respect to Internet conditions, this is

9   what I'll be imposing, and some others here as well.

10          So Mr. Herrera is prohibited from accessing the

11   Internet or possessing or using any devices capable of

12   accessing the Internet, including, but not limited to, laptops,

13   desktops, tablets, skimming devices, smart phones.

14          If the third-party custodian, his father, as well as

15   his mother -- as I said, his father will be required to be with

16   him during all daytime hours, physically present with him.

17          With respect to both his father and mother, they are

18   not allowed to have any Internet-capable devices in their

19   residential unit except for their personal phones, one each,

20   and they have to password-protect those phones and not share

21   the passwords with Mr. Herrera in any way.

22          They also -- if they have Wi-Fi now, it has to be

23   disconnected, and the hardware physically has to be removed

24   from the unit.

25          That's also going to extend to Mr. Herrera's

1   girlfriend, Veronica -- because my understanding is her unit is

2   also a part of this building -- in an effort to further

3   reasonably assure that Mr. Herrera has no access to Internet

4   connectivity.  My understanding is that Veronica is willing to

5   disconnect or has disconnected Wi-Fi in her unit.  She'll be

6   removing that hardware from her unit and will be removing all

7   electronic devices except for her personal cell phone.

8           Ma'am, if you could please verify that you're willing

9   to do that.

10          MS. ARTEAGA:  Yes, I am.  Thank you.

11          THE COURT:  Okay.  Very good.  And thank you for that.

12          Let me just make sure I haven't missed any here, and

13  I'll certainly give an opportunity for others to chime in.

14          I should also say his girlfriend's personal cell phone

15  that she's allowed to keep has to be password-protected.  The

16  password cannot be shared with him, and if it's something he

17  already knows, it needs to be changed immediately.

18          MR. MOTT:  Your Honor, this is Patrick Mott.

19          THE COURT:  Yes.  Go ahead, Mr. Mott.

20          MR. MOTT:  We'd like to request that you just go ahead

21  and order that all the passwords be changed.  I don't think

22  we'd be comfortable relying on anyone's belief that the

23  defendant does not already know those passwords.

24          THE COURT:  I think that's a very fair suggestion and

25  a good suggestion.  I will order that.  And I'd ask if,

Case 1:21-cr-00361-LGS Document 168 Filed 06/10/22 Page 29 of 41
Case 1:22-mc-00361-LGS Document 1-6 Filed 10/10/22 Page 29 of 41 #:96

62

1    understandably, the parents have difficulty navigating the

2    technology such that they don't know how to password-protect

3    their phones or don't know how to change that, I'd ask his

4    sister and girlfriend to assist with that.

5              So all passwords need to be changed on the three

6    personal phones, one for the mom, one for the dad, and one for

7    the girlfriend.  All passwords need to be changed before

8    Mr. Herrera is released.

9              Anything else that you think would make sense,

10   Mr. Mott?

11             MR. MOTT:  No, your Honor.

12             THE COURT:  Okay.  Very good.

13             Either from the government's perspective or pretrial

14   services', have I missed any conditions that you think would

15   make sense to impose here?

16             MR. MOTT:  One issue that I'd like to raise now -- I

17   think it probably could be dealt with as a modification down

18   the road -- it is my understanding that Mr. Herrera's sister is

19   likely to give birth to a child in the near future.  I don't

20   know which Boston hearings will be in person, but it may be

21   necessary to revisit who would be accompanying Mr. Herrera to

22   those hearings, depending on Ms. Herrera's condition and the

23   condition of her child at the time those hearings are ordered.

24             THE COURT:  Yeah, that absolutely makes good sense,

25   Mr. Mott, and that's something that could be done by way of

1     motion or with the consent of the parties and the District of

2     Massachusetts.

3           The Court is not -- well, I would leave it to the

4     charging district to make a determination of who would be

5     appropriate to accompany him. I would leave it to their

6     discretion. At this point all I can say is I do find that his

7     sister, given the background in the pretrial services report,

8     is appropriate to accompany him. If there's a need to

9     substitute her, that obviously would be up to the charging

10     district to do that.

11           Anything else you think would make sense there,

12     Mr. Mott?

13           MR. MOTT: No. I think that makes sense.

14           THE COURT: Okay. Very good.

15           Anything else from pretrial services that you think

16     needs to be addressed at this point?

17           OFFICER TRAMONTE: Your Honor, I apologize if you have

18     reviewed this. Did you go over Condition G?

19           THE COURT: Let's see here.

20           I did. That's no contact with minors, as well as not

21     even any family members. I did include that, yes. Thank you.

22           OFFICER TRAMONTE: Thank you, your Honor.

23           THE COURT: How long would pretrial services like to

24     get the location monitoring installed on Mr. Herrera after his

25     release? I realize it's generally 48. I'd like it to be 24

1    here just out of an abundance of caution if that's possible.

2         OFFICER TRAMONTE:  We appreciate that, your Honor.

3    24 hours is reasonable.  Thank you.

4         THE COURT:  Okay.  Good.  And I know our excellent

5    office here will make every effort to do that as quickly as

6    possible.

7         Anything else, Officer, that we should include?

8         OFFICER TRAMONTE:  No.  Thank you, your Honor.

9         THE COURT:  Okay.  Thank you.

10        So I'm going to go through the admonishment of the

11   defendant and the family members.  Certainly, Mr. Mott, if

12   there's anything further you'd like to inquire, I'll certainly

13   give you an opportunity to do that or to have me do it.

14        So, Mr. Ernesto Herrera, did you hear all of these

15   rules that are going to be imposed upon you upon release?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Okay.  Do you understand them?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Do you have any questions about them?

20        THE DEFENDANT:  No, not at all.

21        THE COURT:  Okay.  And are you willing to follow them?

22        THE DEFENDANT:  Of course.

23        THE COURT:  Okay.  Very good.

24        And you understand that any violations of these rules

25   can include sanctions up to and including you going back to

```
 1   jail?

 2            THE DEFENDANT:  Yes.

 3            THE COURT:  Okay.  Very good.

 4            How about for the third-party custodian, his father?

 5            Mr. Piña, if you could just confirm he's still on the

 6   line with us.

 7            MR. HERRERA SR.:  Yes.

 8            THE COURT:  Okay.  And please have him state his full

 9   name again.

10            MR. HERRERA SR.:  Ernesto Herrera.

11            THE COURT:  Okay.  Sir, did you hear all the rules

12   that I've outlined for your son's release?

13            MR. HERRERA SR.:  Yes.

14            THE COURT:  Are you willing to help him follow those

15   rules?

16            MR. HERRERA SR.:  Yes.

17            THE COURT:  Did you understand the rules that were

18   outlined?

19            MR. HERRERA SR.:  Yes.

20            THE COURT:  Do you have any questions about the rules?

21            MR. HERRERA SR.:  No.

22            THE COURT:  Are you willing to have your son live in

23   you and your wife's residential unit 24 hours a day, seven days

24   a week?

25            MR. HERRERA SR.:  Yes.
```

1      THE COURT:  And are you willing to be physically
2  present with your son in the unit during all daytime hours?
3      MR. HERRERA SR.:  Yes.
4      THE COURT:  Okay.  And if you know that your son is
5  breaking these rules, are you willing to report that to
6  pretrial services?
7      MR. HERRERA SR.:  Yes.
8      THE COURT:  And are you willing to report that even
9  though you know he will get in trouble for it?
10      MR. HERRERA SR.:  Yes.
11      THE COURT:  Okay.
12      Mr. Mott, anything further you'd like for the
13  admonishment of the third-party custodian, Mr. Herrera's
14  father?
15      MR. MOTT:  I don't believe so, your Honor.
16      THE COURT:  Okay.  Very good.
17      I'd like to have Mr. Herrera's sister please put your
18  full name on the record.
19      MS. HERRERA:  Rocio Herrera.
20      THE COURT:  Okay.  And the conditions the Court is
21  asking you to help with is that any in-person travel that's
22  required by your brother to attend court proceedings in the
23  District of Massachusetts, you would need to physically
24  accompany him.
25      MS. HERRERA:  I understand, your Honor.

1          THE COURT:  Okay.  And are you willing to do that?

2          MS. HERRERA:  Yes, your Honor.

3          THE COURT:  And if you learn during that, those

4 travel, that he's attempted to access the Internet, are you

5 willing to report that conduct?

6          MS. HERRERA:  Yes, your Honor.

7          THE COURT:  And you're willing to do that even though

8 you know he'll get in trouble for it?

9          MS. HERRERA:  Yes, your Honor.

10          THE COURT:  Okay.  Very good.

11          And Mr. Mott made the excellent point -- and the Court

12 certainly understands -- that you're expecting a child, and we

13 certainly wish that to be a healthy experience.  If there's

14 some reason that, understandably, you cannot physically travel

15 with your brother, either for you or your child's sake, you

16 would need to seek a substitute in your stead at the Court's

17 discretion and approval.

18          MS. HERRERA:  Thank you, your Honor.

19          THE COURT:  Okay.  Very good.

20          Mr. Mott, anything you'd like to inquire further of

21 Mr. Herrera's sister?

22          MR. MOTT:  Yes, a couple questions.

23          THE COURT:  Go ahead.

24          MR. MOTT:  One, were you on the line during the last

25 hearing when the government proffered evidence that the

1   defendant indicated that he has a compulsion that could lead

2   him to want to access the Internet?

3           MS. HERRERA:  I did hear that, yes.

4           MR. MOTT:  And are you aware that at airports and

5   other places you may pass through, there may be locations where

6   someone could purchase a device that could access the Internet?

7           MS. HERRERA:  I have seen that.

8           MR. MOTT:  And are you willing to take responsibility

9   for making sure that as you are passing through those

10  locations, your brother does not have the opportunity to do

11  that without you knowing?

12          MS. HERRERA:  I will make sure that he stays in my

13  presence at all times, and I will make sure that he is unable

14  to do such a thing.

15          MR. MOTT:  That's all from the government.

16          THE COURT:  Okay.  Thank you, Mr. Mott.

17          Okay.  Next we have Mr. Herrera's girlfriend.  Can you

18  please state your full name for the record, ma'am.

19          MS. ARTEAGA:  Veronica Arteaga.

20          THE COURT:  Okay.  Very good.

21          And how long have you been in a relationship with

22  Mr. Herrera?

23          MS. ARTEAGA:  For about eight years now.

24          THE COURT:  Okay.  And is it the case that you and

25  Mr. Herrera lived in his parents' building, but in a different

1    residential unit?  Is that right?

2                MS. ARTEAGA:  Correct.

3                THE COURT:  Okay.  And so are you willing to -- or you

4    may have already -- have you already disconnected the Wi-Fi in

5    your residential unit?

6                MS. ARTEAGA:  Yes, I have.

7                THE COURT:  Okay.  And are you willing to leave that

8    disconnected?

9                MS. ARTEAGA:  Yes.

10               THE COURT:  Okay.  And are you willing to remove, if

11   you haven't already, any Wi-Fi or hardware from the unit?

12               MS. ARTEAGA:  I have already.

13               THE COURT:  Okay.  Thank you for that.

14               And have you also removed any electronic devices with

15   Internet connectivity in your unit except for your personal

16   cell phone?

17               MS. ARTEAGA:  Yes, I did.  Thank you.

18               THE COURT:  Okay.  Very good.

19               And you're willing to maintain that the only

20   electronic device with Internet connectivity in your

21   residential unit is your personal cell phone?

22               MS. ARTEAGA:  Yes.

23               THE COURT:  Okay.  And you're willing to change the

24   password on that and not share it with Mr. Herrera?

25               MS. ARTEAGA:  Yes.  I have already changed the

1    password.

2             THE COURT:  Excellent.  Okay.

3             And obviously you're not allowed to have Mr. Herrera

4    use your phone.  Are you willing to abide by that?

5             MS. ARTEAGA:  Yes, correct.

6             THE COURT:  Okay.  And if you -- if you learn that

7    Mr. Herrera is attempting to break any of these rules, are you

8    willing to report that to the Court and pretrial services?

9             MS. ARTEAGA:  Yes, I am.

10            THE COURT:  Okay.  And are you willing to do that even

11   though you know he'll get in trouble for it, including possibly

12   going back to jail?

13            MS. ARTEAGA:  Yes, I am.

14            THE COURT:  Okay.

15            Mr. Mott, anything you'd like to inquire further?

16            MR. MOTT:  No, your Honor.

17            THE COURT:  Okay.  So that the Court finds that

18   defendant Herrera and his family members, the three of them

19   here, understand the rules that Mr. Herrera must abide by upon

20   his release, they understand the seriousness of the

21   responsibilities, and the family members are freely and

22   voluntarily undertaking those responsibilities, the Court

23   having given the government an opportunity to further admonish

24   those family members.

25            Before I move on to the logistics of the stay order,

1    is there anything else the parties would like to address in

2    terms of the release conditions here?

3              Mr. Mott, anything else?

4              MR. MOTT:  No, your Honor.

5              THE COURT:  Okay.

6              Ms. Johnson?

7              MS. JOHNSON:  Not from the defense.

8              THE COURT:  Okay.

9              Anything else from pretrial services?

10             OFFICER TRAMONTE:  No, your Honor.  Thank you.

11             THE COURT:  Okay.  Thank you.

12             So Mr. Mott helpfully brought to the Court's attention

13   that the prosecutors in the District of Massachusetts do intend

14   to appeal the release order if one is issued.  So out of

15   respect and comity for that district's proceedings, the order

16   setting conditions of release as to Mr. Herrera will be stayed

17   until 1:15 Central on Friday, June 11th.  That gives

18   prosecutors in that district 48 hours to get an appeal on file

19   if they choose to do so.

20             If the Court is not notified of an appeal filed in the

21   District of Massachusetts by 1:15 Central on Friday, June 11th,

22   the stay of the order setting conditions of release as to

23   Mr. Herrera will be lifted and he shall be released that

24   afternoon.

25             Counsel for the government and the defendant,

1   Ms. Johnson -- Mr. Mott and Ms. Johnson, are directed to let

2   the Court and the marshals know the status of any such appeal

3   and the status of the stay order and the release order no later

4   than 1:15 Central on Friday.  And if an appeal is filed

5   earlier, if you could please let us know that as well.

6          Anything else you think we should address logistically

7   with respect to the stay order?

8          MR. MOTT:  This is Patrick Mott.

9          THE COURT:  Sure.

10         MR. MOTT:  Is there anything on the actual order

11  setting conditions of release that I'm preparing that needs to

12  reference the stay?  This will be my first time putting it

13  together, so I just want to make sure there isn't a special box

14  or something like that.

15         THE COURT:  Not that I know of.  When we've done this

16  I believe one time in the past, we have included it in the

17  minute order on the docket.  So I think that would be the

18  appropriate place for it.  Certainly if when that's entered you

19  see an issue with that, let us know.  But that's how we've

20  handled it in the past.

21         What I would say, though, is, Mr. Mott and

22  Ms. Johnson, please stay on top of, as I know you will, the

23  status of it because 1:15 on Friday may come and go, and unless

24  you folks alert the Court and the marshals as to what's going

25  on, no one else may know.  All right?  So it's just incumbent

1    upon the counsel, as I know you will, to stay on top of that.

2          But, otherwise, we'll put it in the minute order for

3    you, Mr. Mott.  If you need to change any language, just let us

4    know, but that would be my proposed plan on that.

5          MR. MOTT:  That makes sense.

6          MS. JOHNSON:  Your Honor, Jasmine Johnson speaking.

7          I just have one quick question.  In terms of your

8    deputy for Friday, do you know who that will be so we can -- if

9    we do need to reach out to your deputy?

10          THE COURT:  Great point.  I have been helped by great

11    folks this week.  I don't know exactly who will be on Friday,

12    so here's my suggestion for that.  Thank you for raising that.

13          So, one, you can send an e-mail to our chambers e-mail

14    address.  And that's monitored by members of my team throughout

15    the day, and that address is on the website.  Also, call our

16    chambers line, and that message will get to us one way or

17    another.

18          MS. JOHNSON:  Thank you.  Okay.  Thank you.

19          THE COURT:  Very good.

20          Anything else from either of the parties?

21          MR. MOTT:  Not from the government.

22          MS. JOHNSON:  Not from the defense.

23          THE COURT:  Okay.  Thanks, everyone.

24          MR. MOTT:  Thank you.

25        (Concluded at 1:05 p.m.)

1          C E R T I F I C A T E

2      I certify that the foregoing is a correct transcript of the

3   record of proceedings in the above-entitled matter.

4

5   _/s/ LAURA R. RENKE_                          _June 10, 2021_
    LAURA R. RENKE, CSR, RDR, CRR
6   Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25