UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA * <br> * <br> v. * <br> *    Criminal No. 1:21-mj-02498-MBB <br> ERNESTO HERRERA, * <br> * <br> Defendant. * | |

MEMORANDUM
June 14, 2021

TALWANI, D.J.

After the Magistrate Judge ordered Defendant Ernesto Herrera released with conditions, the government sought a stay and revocation of the release order. Gov. Emergency Mot. ("Gov. Mot.") [#9]. Following a hearing, the court allowed the Motion [#9] and ordered Defendant detained. Order [#11]. This memorandum provides the court's reasoning.

I.  Background

On June 1, 2021, Herrera was charged by criminal complaint with one count of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a), and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). Complaint [#4].

On June 3, 2021, Defendant was arrested at his residence in Chicago, Illinois, and appeared before the Magistrate Judge in the Northern District of Illinois. See Docket No. 21-cr-00361, Order [#2], attached to Gov. Mot. [#9-5]. The government moved for detention, id., while Probation and Pretrial Services recommended that Herrera be released with conditions. See Pretrial Services Report Addendum (6/7/21) 2-3. The Magistrate Judge held the detention hearing on June 7 and 9, 2021. See June 7, 2021 Transcript ("June 7 Tr.") [#9-1]; June 9, 2021 Transcript ("June 9 Tr.") [#9-2].

At the detention hearing, the government argued that Defendant could not rebut the

applicable presumption of detention, and even if the presumption was rebutted, there was no combination of conditions that could assure the safety of the community and mitigate the risk of flight. June 7 Tr. 20:19-29:16 [#9-1]. The government relied on the Affidavit of Lisa Crandall in Support of a Criminal Complaint ("Crandall Aff.") [#4-3] as well as Defendant's post-arrest, Mirandized statements.

The Crandall Affidavit [#4-3] provides the following: on February 2, 2021, law enforcement interviewed a minor female ("MINOR A") who lives in Massachusetts; during that interview, MINOR A provided information regarding a Snapchat[1] user (the username is redacted in the Crandall Affidavit [#4-3], the court uses "Snapchat Username 1") who sent a friend request through the platform to MINOR A when she was approximately 16 years old. Id. at ¶¶ 4, 5. After MINOR A accepted the friend request, Snapchat Username 1 sent a video through the platform to MINOR A. Id. at ¶ 5. The video depicted MINOR A engaged in a sexual act and Snapchat Username 1 threatened to share the video with MINOR A's friends and family if MINOR A did not make more videos and send them to Snapchat Username 1. Id. After Snapchat Username 1 threatened her, MINOR A made additional videos. Id. Snapchat Username 1 was able to view these videos because he had access to MINOR A's Snapchat account and could view images and videos that were saved to her password protected files. Id. at ¶¶ 5, 6 n.4, p. 4.

Snapchat Username 1 also communicated with MINOR A via text messages. Id. at ¶ 8. Law enforcement reviewed MINOR A's phone and identified text messages between MINOR A and a telephone number ending in 8121; the first text message from the 8121 number to MINOR A was sent on June 4, 2020, the same day Snapchat Username 1 sent a friend request to MINOR A. Id. The

---

[1] "Snapchat is a free-access social networking mobile application made by Snap, Inc. The application is available through the Apple iPhone "App Store" and Google Play, and it provides users a way to share photos, videos and text. Snapchat is one of the most popular applications for sending and receiving 'self-destructing' messages, pictures, and videos, referred to as 'snaps.'" Crandall Aff. ¶ 4 n.1 [#4-3].

Crandall Affidavit [#4-3] includes excerpts of text messages between MINOR A and the 8121 number, including the following messages: the 8121 number states "Your videos are going to get leaked to your friends and internet"; MINOR A states that she is 16 years old; the 8121 number tells MINOR A to send more videos; and MINOR A sends two nude images. Id. at 4-6. Law enforcement also reviewed MINOR A's Snapchat account and identified images and videos that included MINOR A performing various sexual acts that appeared to have been created by MINOR A and shared with Snapchat Username 1. Id. at ¶¶ 11-13.

Based on the information above, the Federal Bureau of Investigation ("FBI") obtained a search warrant for the Snapchat account associated with Snapchat Username 1. Id. at ¶ 14. The search warrant returned over one thousand media files[2] sent from MINOR A to Snapchat Username 1. Id. Some of these media files included videos of MINOR A engaged in sexual acts. Id. The Crandall Affidavit [#4-3] provides specific descriptions of two of the media files sent on June 4, 2020, from MINOR A to Snapchat Username 1. Id. at ¶¶ 15-16.

Through various administrative subpoenas, law enforcement associated the 8121 number with a Yahoo email account which in turn was associated with a 9335 phone number subscribed to by Ernesto Herrera in Chicago, Illinois. Id. at ¶¶ 17-18. Administrative subpoenas served on Snapchat returned a Comcast internet protocol ("IP")[3] address associated with Snapchat Username

---

[2] A media file is a file that includes pictures, music, audio files, and video files. Crandall Aff. ¶ 14 n.11 [#4-3].

[3] "An "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers (ISPs) control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP could assign a different unique number to a computer or device when it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on specific dates and times." Crandall Aff. ¶ 20 n.17 [#4-3].

1; that Comcast IP address was also registered to Ernesto Herrera in Chicago, Illinois. Id. at ¶ 21. The Comcast IP address is also connected to the 9335 phone number. Id. at ¶¶ 22-23.[4]

The government also relied at the detention hearing on Defendant's post-arrest, Mirandized statements. The government represented that in Defendant's recorded interview (a copy of which was produced to Defendant's counsel), Defendant admitted that he had been communicating with MINOR A through her Snapchat account and that he had communicated similar threats to four or five other females in an attempt to coerce them into providing him with nude images. June 7 Tr. 22:24-23:15 [#9-1]. The government reported further that Defendant also stated that he had an addiction or compulsion related to masturbation that he cannot control. Id. at 24:8-19.

Defendant was represented by counsel at the detention hearing. Counsel argued there were conditions of release the Magistrate Judge could impose and stated that Defendant's family members would be willing to comply with whatever conditions the Magistrate Judge imposed, including limiting their access to the internet, and supervising Defendant 24 hours a day. Id. at 18:3-12; 18:21-25. Defense counsel, relying on the Pretrial Services Report, stated that Defendant was a lifelong resident of Chicago, had no criminal history, had a solid employment history, including current employment, and would surrender his passport to Probation and Pretrial Services. Id. at 17:23-18:19.

After hearing counsels' argument, the Magistrate Judge stated that she wanted "to hear from the family members who would be called upon to have responsibility in this case: Mr. Herrera's dad who is proposed [Defendant] would live with . . . [Defendant's] girlfriend [who] would have restrictions on what electronic devices she could have in the building" and also Defendant's sister who would accompany him "on any and all travel necessary for court purposes." Id. at 31:2-17.

---

[4] The FBI also identified other IP addresses Snapchat Username 1 accessed on Snapchat and determined that Defendant had been in those locations when the Snapchat account was accessed. Id. at ¶¶ 28-31 [#4-3].

During the second day of the detention hearing, on June 9, 2021, the Magistrate Judge found that Defendant offered evidence sufficient to rebut the presumption of detention and found there were conditions that could be fashioned to release Defendant. June 9 Tr. 43:3-8 [#9-2]. The Magistrate Judge ordered Herrera released on a $10,000 appearance bond and ordered him confined to home incarceration with location monitoring. See Appearance Bond [#9-3]; Order Setting Conditions of Release [#9-4]; June 9 Tr. 52:19-55:4 [#9-2].

On the government's request for a stay to allow a motion for revocation to be filed in this court, the Magistrate Judge stayed the release for 48-hours. June 9 Tr. 71:12-72:5 [#9-2].

II. Legal Standard

Title 18, U.S.C. § 3145(a) states that "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." Upon such a motion, the court's review of contested findings in a magistrate judge's release order is de novo. See United States v. Tortora, 922 F.2d 880, 884 n.4 (1st Cir. 1990).

Under the Bail Reform Act of 1984, a judicial officer may order a defendant detained pending trial if the government establishes (1) by clear and convincing evidence that a defendant is a danger to the community, or (2) by a preponderance of the evidence that a defendant poses a serious risk of flight. 18 U.S.C. § 3142(f); see United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); see also United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). The judicial officer may then detain the defendant pending trial only if the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e).

In making this determination the judicial officer must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a minor victim;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including
>   A. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,
>   B. whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . .

18 U.S.C. § 3142(g).

"Pursuant to 18 U.S.C. § 3142(e)(3)(E), a rebuttable presumption of detention exists in offenses involving a minor victim. To rebut that presumption, defendant must produce 'some evidence' that a condition or combination of conditions can reasonably assure the appearance of a person and safety of the community." United States v. Cross, 389 F. Supp. 3d 140, 142 (D. Mass. 2019) (quoting Dillon, 938 F.2d at 1416). "The presumption merely creates a burden of *production* on the defendant; [ ] it does not shift the burden of persuasion which remains throughout the hearing on the government." United States v. Shea, 749 F. Supp. 1162, 1165 (D. Mass. 1990) (Once the presumption attaches, a burden to produce "some [relevant] evidence" shifts to a defendant.) (citing United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985); United States v. O'Brien, 895 F.2d 810, 815 (1st Cir. 1990)). A defendant's introduction of relevant evidence does not eliminate the presumption entirely. See Dillon, 938 F.2d at 1416. The presumption remains in the case for the court to consider alongside the government's ultimate burden of persuasion. Jessup, 757 F.2d at 381, 383.

III. Analysis

The government's position that Herrera should be detained is grounded both on risk of flight and the safety of the community. Gov. Mot. 1 [#9].

A. <u>Risk of Flight</u>

Because the charges involve a minor victim, the rebuttable presumption of detention applies. The Defendant has met his burden of producing some evidence to show that conditions of release can be imposed that can assure his appearance as required and the safety of the community. Accordingly, the court turns to whether the government can meet its burden of persuasion.

The government contends that Herrera poses a risk of flight that cannot be mitigated with conditions of release. The government finds "no greater incentive to flee" than the fact that Herrera "has never served a day in jail and . . . is now facing a mandatory minimum sentence of fifteen years in prison." <u>Id.</u> at 23. The government notes further that, prior to the pandemic, Defendant "travelled almost yearly to Mexico"; and that he has no ties to the District of Massachusetts where he is charged with this offense. <u>Id.</u> The government also notes that he would have to travel to this district for court appearances, with only his sister as a third-party custodian. <u>Id.</u> at 23-24.

Counsel for Herrera argues here and before the Magistrate Judge that Herrera's ties to his family and community in Chicago, as well as his work history and lack of criminal history demonstrated that there were conditions that could be imposed that would account for risk of flight, including forfeiture of his passport and home incarceration with location monitoring. June 7 Tr. 17:22-18:19 [#9-2].

The court finds that the weight of the evidence against Herrera, and the significant sentence he faces if convicted, weigh strongly towards establishing a flight risk. The court finds other facts weigh against a risk of flight: Herrera was born and raised and has spent his entire life in the Chicago area, has a high school diploma, and attended some college there; he has no criminal history; and has a steady record of employment. <u>See</u> Pretrial Services Report 1-2. The absence of legitimate ties to Massachusetts is irrelevant where Herrera has strong ties to Illinois.

The court concludes that the government has not demonstrated that the risk of flight is not

mitigated by the combined conditions imposed by the Magistrate Judge, including the proposed $10,000 appearance bond, home incarceration with location monitoring, monitoring by his father with whom he would reside, and the surrender of Defendant's passport, so as to reasonably assure the appearance of the Defendant as required.

B. Danger to the Community

The government argues the nature and circumstances of the charged offense, the impact the charged offense has had on MINOR A, and the weight of the evidence establish that Herrera is a danger to the community. Gov. Mot. 20-23 [#9]. The government argues further that Herrera's criminal activity is of the type that can be undertaken at home because "[a]ll he needs is access to the internet to continue to feed his addiction and exploit others" and therefore the conditions imposed by the Magistrate Judge are insufficient to assure the safety of the community. Id. at 22.

The court finds that the government has met its burden to show, by clear and convincing evidence, that Herrera's release would pose a danger to the safety of other persons. First, the charged crimes can be committed while Defendant resides with his parents, so long as he has access to a device connected to the internet. Second, there is substantial evidence that Defendant is able to coerce individuals into fulfilling his demands (see Crandall Affidavit [#4-3] detailing Defendant's coercion of MINOR A and others) raising the risk that Defendant could use similar strategies to coerce his parents and/or girlfriend into assisting him in accessing the internet. Third, a device to access the internet is small and easily concealed, and Defendant could potentially obtain a phone through others without his parents' knowledge. Fourth, based on the Crandall Affidavit [#4-3] detailing his online activity, including accessing MINOR A's password protected account, and his post-Miranda interview in which he admitted to taking steps to prevent his girlfriend from learning of his online activity by frequently changing the passwords on his devices and using facial recognition, the government has shown that Defendant has proficiency with using devices to

8

conceal his identity, and is able to gain access to other people's password protected accounts. Finally, Defendant's admission that he was addicted to masturbating; that he sought images from people directly so he could masturbate; that he needed more material; that, although he had tried to stop using Snapchat to get these images, he had not been able to stop, suggest that Defendant may not be able to refrain from attempting to engage in such conduct while on home incarceration.

The court has carefully considered the conditions imposed by the Magistrate Judge and finds that they are not sufficient to remove this danger. While Defendant's father has agreed to remain with Defendant in Defendant's parents' apartment, presumably there will be times where Defendant's father is sleeping, or not in Defendant's immediate proximity. And although his parents are prepared to use only phones that are not connected to the internet and the wifi in their residence has been disconnected, the court finds no conditions sufficient to prevent Defendant from obtaining a smart phone from another source and accessing the internet through cell service.

In sum, the court concludes that the government has established by clear and convincing evidence that Herrera's release poses a danger and that "no condition or combination of conditions . . . will reasonably assure the . . . safety of any other person in the community." 18 U.S.C. § 3142(e)(1).

IV. Conclusion

For the aforementioned reasons, the court finds that Defendant should be detained pending trial.

Date: June 14, 2021              /s/Indira Talwani
                                 United States District Judge